**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| YOUANNY HERNANDEZ-SEVERIO, | : | |
| | : | Civil Action No. 03-2336 (RBK) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| C.J. DeROSA, | : | |
| | : | |
| Respondent. | : | |

**APPEARANCES:**

| | |
|---|---|
| Petitioner <u>pro se</u> | Counsel for Respondent |
| Youanny Hernandez-Severio | Irene E. Dowdy |
| #14078-069 | Assistant U.S. Attorney |
| F.C.I. Fort Dix | 402 East State Street |
| Unit 5802, West | Suite 430 |
| P.O. Box 7000 | Trenton, NJ 08608 |
| Fort Dix, NJ 08640 | |

**KUGLER**, District Judge

Petitioner Youanny Hernandez-Severio, a prisoner confined at the Federal Correctional Institution at Fort Dix, New Jersey, has submitted a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2241,[1] challenging the results of a prison disciplinary

---

[1] United States Code Title 28, Section 2241, provides in pertinent part:
   (a) Writs of habeas corpus may be granted by the ... district courts ... within their respective jurisdictions ...
   (c) The writ of habeas corpus shall not extend to a prisoner unless- ... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ... .

proceeding.  The sole respondent is Warden C.J. DeRosa.

For the reasons set forth below, the Petition will be denied.

## I.  BACKGROUND

On March 16, 2002, while Petitioner was incarcerated pursuant to a criminal conviction and sentence imposed in the U.S. District Court for the District of Puerto Rico, a correctional officer conducted a routine search of Petitioner's locker and found seven capsules printed with the word "Hydroxycut" in a jar labeled for Vitamin C.  An incident report was issued charging Petitioner with a violation of Offense Code 113, Possession of any Narcotic, Marijuana, Drugs, or Related Paraphernalia Not Prescribed for the Individual by the Medical Staff.  The incident report was delivered to Petitioner on March 17, 2002.

The Unit Discipline Committee ("UDC") conducted a hearing on March 21, 2002.  The UDC referred the matter to the Discipline Hearing Officer ("DHO"), with a recommendation for all sanctions applicable for commission of Offense Code 113, if Petitioner were found to have committed the prohibited act.  (Answer, Ex. 1c, Incident Report No. 974181.)

The DHO hearing took place on March 28, 2002.  Petitioner admitted that the pills were his.  He stated that they were not narcotics, but were for weight reduction.  Petitioner's medical

file confirmed that the pills had not been prescribed to Petitioner. On April 22, 2002, the DHO issued his report finding that Petitioner had committed Offense Code 113. The DHO imposed sanctions including loss of 94 days good conduct time and loss of other privileges.

Petitioner pursued the Bureau of Prisons' Administrative Remedy Program, 28 C.F.R. § 542.10 et seq., by filing an appeal with the Regional Director. Petitioner contended that:

> The Code 113 should be a code 305 or 302 and not the 113. The medication wasn't narcotic and no where in the record was medical staff contacted to verify what grade of medication the alleged narcotics was.

(Petitioner's Ex. 4.) In denying Petitioner's appeal, the Regional Director stated:

> You contend the medication was not proven to be a narcotic. You admitted to the DHO that the pills belonged to you. You stated they were not narcotics, but were for weight reduction. The prohibited act is committed when an inmate possesses any narcotic, marijuana or drug not prescribed by medical staff for his individual use. The pills are considered a drug and do not have to be a narcotic drug. Even if, as you claim, another inmate did give you the pills, you were not authorized to possess them as they were not prescribed for you. Based on the evidence presented, the DHO reasonably determined you committed the prohibited act of possession of any drug not prescribed by medical staff.

(Petitioner's Ex. 5.)

Petitioner then appealed to the BOP's Central Office, contending that:

> "Staff incorrectly wrote the wrong code for the Prohibited Act Code 113. ... HYDROXYCUT is a

3

> supplement ... .  The Incident Report should have been
> 302 Misuse of unauthorized medication, or 305
> Possession of anything not authorized for retention or
> receipt by the inmate, and not issued to him through
> the regular channels.

(Petitioner's Ex. 6.)  The Administrator, National Inmate Appeals, denied the appeal, stating, "As to the substance confiscated, the substance is considered a drug, contrary to your assertion."  (Petitioner's Ex. 7.)

On May 21, 2003, this Court received this Petition, in which Petitioner admits possession of the seven Hydroxycut capsules. Petitioner asserts, however, that he should have been charged with an Offense Code 305, which carries lesser sanctions than the Offense Code 113, because Hydroxycut is a supplement rather than a drug.  He asserts that laboratory testing should have been performed to determine the specific nature of the substance seized.

On August 20, 2003, while the Petition was pending in this Court, the BOP's National Inmate Discipline Administrator forwarded an electronic mail message to the DHOs:

> The purpose of this e-mail is to reiterate a decision regarding inmate's possession of substances such as Creatine, Nortesten, and Hydroxycut.
>
> In the past, inmates were written incident reports for Possession of Narcotics or Drugs when these or similar substances were found in their possession.  However, the most appropriate prohibited act code would be Possession of Anything Not Authorized as these substances are considered as dietary supplements by the Food and Drug Administration and are not regulated as a drug.

(Answer, Hebbon Declaration ¶ 5 and Ex. 1e.)

On August 26, 2003, the DHO issued an amended DHO Report respecting Petitioner's Incident Report, amending the Findings and Sanctions portions of the Report to find that Petitioner had committed the prohibited acts for Offense Code 305, Possession of Anything Unauthorized.  He imposed sanctions including disallowance of 13 days good conduct time and forfeiture of 13 days non-vested good conduct time, for a total loss of 26 days good conduct time.  Petitioner was advised of the amended DHO Report and of his right to appeal from that amended DHO Report under the Administrative Remedy procedure.

As a result of these intervening events, Respondents suggest that this Petition is moot and that this Court should reject any attempt to challenge the amended sanctions.

Petitioner replies that the Petition is not moot, that he should not be required to start anew appealing the DHO Report that was amended as a result of the administrative appeals, and that the charges should have been dismissed, rather than amended, as a result of the change in policy reflected in the e-mail from the BOP's National Inmate Discipline Administrator.  (Traverse.)

Because Petitioner is not entitled to relief under his revised theory of due process deprivation, this Court need not determine whether the case is moot or whether Petitioner should be required to pursue another round of administrative appeals.

II.   LEGAL STANDARD

"Habeas corpus petitions must meet heightened pleading requirements."  McFarland v. Scott, 512 U.S. 849, 856 (1994).  A petition must "specify all the grounds for relief" and must set forth "facts supporting each of the grounds thus specified."  See Rule 2(c) of the Rules Governing § 2254 Cases in the U.S. District Courts (amended Dec. 1, 2004) ("Habeas Rules"), made applicable to § 2241 petitions through Rule 1(b) of the Habeas Rules.

Nevertheless, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

III.   ANALYSIS

A.   Jurisdiction

A habeas corpus petition is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement, Preiser v. Rodriguez, 411 U.S. 475, 498-99 (1973), including challenges to prison disciplinary proceedings that affect the

length of confinement, such as deprivation of good time credits, Muhammad v. Close, 540 U.S. 749 (2004) and Edwards v. Balisok, 520 U.S. 641 (1997). See also Wilkinson v. Dotson, 125 S.Ct. 1242 (2005). Habeas corpus is an appropriate mechanism, also, for a federal prisoner to challenge the execution of his sentence. See Coady v. Vaughn, 251 F.3d 480, 485-86 (3d Cir. 2001); Barden v. Keohane, 921 F.2d 476, 478-79 (3d Cir. 1990). In addition, where a prisoner seeks a "quantum change" in the level of custody, for example, where a prisoner claims to be entitled to probation or bond or parole, habeas is the appropriate form of action. See, e.g., Graham v. Broglin, 922 F.2d 379 (7th Cir. 1991) and cases cited therein.

To the extent a prisoner challenges sanctions affecting his conditions of confinement, however, such claims must be raised by way of a civil rights action. See Leamer v. Fauver, 288 F.3d 532 (3d Cir. 2002). Where a favorable outcome necessarily would imply the invalidity of the length of a prisoner's sentence, such claims do not accrue until the sanction has been invalidated through reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. See Heck v. Humphrey, 512 U.S. 477 (1994). Thus, this Court can award no relief related to those sanctions that do not affect the length of Petitioner's

sentence.

B.   Petitioner's Claims

Convicted and sentenced prisoners retain the protections of the Due Process Clause of the Fifth and Fourteenth Amendments that the government may not deprive them of life, liberty, or property without due process of law.  See Wolff v. McDonnell, 418 U.S. 539, 556 (1974); Haines v. Kerner, 404 U.S. 519 (1972); Wilwording v. Swenson, 404 U.S. 249 (1971).  Such protections are, however, "subject to restrictions imposed by the nature of the regime to which [prisoners] have been lawfully committed. ...  In sum, there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application."  Wolff, 418 U.S. at 556.

A liberty interest protected by the Due Process Clause may arise from either of two sources:  the Due Process Clause itself or from state or federal law.  See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d Cir. 1999).

Where the government has created a right to good time credits, and has recognized that a prisoner's misconduct authorizes deprivation of the right to good time credits as a

sanction,[2] "the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment 'liberty' to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated." Wolff, 418 U.S. at 557.

Thus, a prisoner is entitled to an impartial disciplinary tribunal, Wolff, 418 U.S. at 570-71, excluding "only those [prison] officials who have a direct personal or otherwise substantial involvement ... in the circumstances underlying the charge from sitting on the disciplinary body," Meyers v. Alldredge, 492 F.2d 296, 306 (3d Cir. 1974).

To comply with the requirements of the Due Process Clause, prison officials also must provide a prisoner facing loss of good time credits with: (1) a written notice of the charges at least 24 hours prior to any hearing, (2) an opportunity to call witnesses and presented documentary evidence in his defense when permitting him to do so will not be unduly hazardous to

---

[2] The Constitution itself does not guarantee good time credits for satisfactory behavior in prison.  Congress, however, has provided that federal prisoners serving a term of imprisonment for more than one year, other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of their sentence based upon their conduct.  See 18 U.S.C. § 3624(b); 28 C.F.R. § 523.20.

institutional safety or correctional goals,[3] and (3) a written statement by the factfinders as to the evidence relied on and the reasons for the disciplinary action. <u>Wolff</u>, 418 U.S. at 564-66. Prisoners do not have a due process right of confrontation and cross-examination, or a right to counsel, in prison disciplinary proceedings. <u>Id.</u> at 569-70. Where an illiterate inmate is involved, or the complexity of the issue makes it unlikely that the inmate involved will be able to collect and present the evidence necessary for an adequate comprehension of the case, the prisoner should be permitted to seek the aid of a fellow inmate or appropriate staff member. <u>Id.</u> at 570.

Finally, due process requires that findings of a prison disciplinary official, that result in the loss of good time credits, must be supported by "some evidence" in the record. <u>Superintendent, Massachusetts Correctional Institution at Wolpole</u>

---

[3] Prison officials must justify their refusal to call witnesses requested by the prisoner, but such justification need not be presented at the time of the hearing. To the contrary, the explanation for refusal to call witnesses requested by the prisoner may be provided through court testimony if the deprivation of a liberty interest is challenged because of that claimed defect in the hearing. <u>See</u> <u>Ponte v. Real</u>, 471 U.S. 491 (1985). "{P]rison officials may deny a prisoner's request to call a witness in order to further prison security and correctional goals. ... [T]he burden of persuasion as to the existence and sufficiency of such institutional concerns is borne by the prison officials, not by the prisoners." <u>Grandison v. Cuyler</u>, 774 F.2d 598, 604 (3d Cir. 1985).

v. Hill, 472 U.S. 445, 454-56 (1985).[4]

Here, following a change in circumstances during the pendency of this action, Petitioner argues that he was deprived of due process as a result of the amended DHO Report, contending that the charges should have been dismissed rather than amended. The Court construes Petitioner's challenge to the amendment of the DHO Report during the administrative appeal process as a claim that he did not receive the required advance notice of the charges against him.

Petitioner does not dispute any of the operative facts regarding his possession of the Hydroxycut capsules and he does not explain how a more precise charge of Offense Code 305 in the initial Incident Report would have affected his defense against the amended charge. To the contrary, at the DHO hearing and in the administrative appeals, Petitioner insisted that Offense Code 305 should have been charged and admitted that he had committed a violation of Offense Code 305. Thus, it does not appear that Petitioner suffered any actual lack of notice.

Moreover, procedural errors in the prison discipline process are subject to "harmless error" analysis. See Elkins v. Fauver,

---

[4] The due process requirements of Wolff, as they relate to federal prisoners, have been codified in the Code of Federal Regulations at 28 C.F.R. § 541.10 et seq. See, e.g., 28 C.F.R. § 541.14 (Incident report and investigation); 28 C.F.R. § 541.16 (Establishment and functioning of the Discipline Hearing Officer); 28 C.F.R. § 541.17 (Procedures before the Discipline Hearing Officer).

969 F.2d 48, 53 (3d Cir.), cert. denied, 506 U.S. 977 (1992); Hollawell v. Lehman, 1995 WL 447470 (E.D. Pa. July 27, 1995), aff'd, 96 F.3d 1433 (3d Cir. 1996).  See also Powell v. Coughlin, 953 F.2d 744 (2d Cir. 1991) (quoted with approval in Elkins).  To the extent Petitioner did not receive actual notice that the charge against him was Offense Code 305, the error was harmless. Petitioner does not dispute the operative facts.  Indeed, he never disputed that those facts constituted a prohibited act. Nor does Petitioner dispute that the amended sanctions fall within the permissible range.  Petitioner is not entitled to relief on this due process claim.

## IV.  CONCLUSION

For the reasons set forth above, the Petition will be denied.  An appropriate order follows.

```
                                    S/Robert B. Kugler
                                    Robert B. Kugler
                                    United States District Judge
```

Dated: September 13, 2005